## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| **ZOCCAM TECHNOLOGIES, INC.,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. _____** |
| **BOLD HOLDINGS, LLC, DAVID LANCASHIRE, STEPHEN ANDREWS, TODD GIRVIN, and PROJEKT202, LLC,** | |
| **Defendants.** | |

## COMPLAINT

ZOCCAM Technologies, Inc. ("ZOCCAM") files this Complaint against Defendants Bold Holdings, LLC ("Bold"), David Lancashire, Stephen Andrews, Todd Girvin, and projekt202, LLC ("P202") (collectively "Defendants"), and states:

## NATURE OF THE ACTION

1.      This is a civil action for copyright infringement arising under 17 U.S.C. § 101, *et seq.* and claims arising under the laws of Texas, subject to the Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367.  ZOCCAM seeks damages and injunctive relief as provided under 17 U.S.C. § 101, *et seq.* and applicable Texas law.

## PARTIES

2.      Plaintiff ZOCCAM Technologies, Inc. is a Texas corporation with a principal place of business located at 5950 Berkshire Lane, Suite 1460, Dallas, Texas, 75225.

3.      Defendant Bold Holdings, LLC is a Texas limited liability company with a principal place of business located at 5080 Spectrum Drive Suite 320W, Addison, Texas, 75001

**COMPLAINT – Page 1**

and can be served through its registered agent, Stephen Andrews, 14241 Dallas Parkway, Suite 510, Dallas, Texas 75254.

4.      Defendant David Lancashire is an individual residing at 6415 Desco Dr., Dallas, Texas, 75225.

5.      Defendant Stephen Andrews is an individual residing at 13330 Noel Road Apt. 421, Dallas, Texas, 75240.

6.      Defendant Todd Girvin is an individual residing at 4406 Browser Ave. Apt. 4, Dallas, Texas, 75129.

7.      Defendant projekt202, LLC is a Delaware limited liability company with a principal place of business located at 5080 Spectrum Drive Suite 320W, Addison, Texas, 75001 and can be served through its registered agent, Stephen Andrews, 14241 Dallas Parkway, Suite 510, Dallas, Texas 75254.

## JURISDICTION AND VENUE

8.      The Court has subject matter jurisdiction pursuant 28 U.S.C. §§ 1331 and 1338(a) because this is a civil action arising under 17 U.S.C. § 101 *et seq.* (federal copyright law).  The Court has supplemental jurisdiction over claims arising under the laws of Texas pursuant to 28 U.S.C. § 1367 because ZOCCAM's claims are so related to the claims within the Court's original jurisdiction that they form a part of the case or controversy under Article 3 of the United States Constitution.

9.      The Court has personal jurisdiction over David Lancashire, Stephen Andrews, and Todd Girvin because they are all domiciled and currently reside in Texas.  The Court has personal jurisdiction over both Defendants Bold Holdings, LLC and projekt202, LLC because both companies have offices and principal places of business physically present in Texas and have

**COMPLAINT** – Page 2

minimum sufficient dealings, affiliations, or other contacts in the state which make it reasonable to require the companies to defend a lawsuit in Texas.

10.     Venue is proper in this District because (1) all or a substantial part of the events or omissions giving rise to the claim occurred in the Northern District of Texas, and (2) the Defendants are otherwise subject to personal jurisdiction in the Northern District of Texas.  *See* 28 U.S.C. § 1391(b).  Further, pursuant to the Master Services Agreement ("MSA") at issue in this suit, all disputes arising under the MSA must be brought in the state and federal courts located in Dallas County, Texas.

## FACTUAL BACKGROUND

**ZOCCAM's Initial Product and Expansion Plan**

11.     In 2014, Ashley Cook, a Dallas-area real estate attorney, founded ZOCCAM's predecessor, ZOCCAM Technologies, LLC ("ZOCCAM LLC").  ZOCCAM LLC was founded to minimize the hassle of securely delivering earnest money to a title company during the purchase or sale of a home.  Ms. Cook realized that real estate agents across the state and the country were losing thousands of hours and millions of dollars ensuring that a purchaser's earnest money was successfully and securely delivered.  Oftentimes, this required the real estate agent to physically drive or hand deliver the earnest money to the title company, which may be located across the city.  Ms. Cook determined that there must be a simpler way to deliver the earnest money.  From this determination, she founded ZOCCAM LLC with the goal of developing a simpler method.

12.     In December of 2014, ZOCCAM LLC took a major step toward this goal by launching the first version of a proprietary method for delivering earnest money through its self-titled phone application ("ZOCCAM App.").  ZOCCAM App. facilitated the sale and purchase of

homes by allowing Texas real estate agents to securely deposit earnest money directly with title companies from their smartphones, instead of the timely and expensive hand delivery process.

13.     In the spring of 2015, ZOCCAM LLC began looking for a technology development company to improve, expand, and scale the application nationally.

14.     During the search, ZOCCAM LLC met with P202—through its principals David Lancashire and Stephen Andrews—to discuss performing the desired updates.  At the time, Defendants Lancashire and Andrews were P202's CEO and CFO, respectively.

**ZOCCAM Employed P202 to Update the ZOCCAM App.**

15.     On May 28, 2015, P202 signed a Mutual Nondisclosure Agreement ("NDA"), attached as Exhibit 1, where P202 agreed to maintain ZOCCAM's information, trade secrets and source code confidential.  The NDA required that P202 maintain the "secrecy of and avoid disclosure and unauthorized use of the confidential information" of ZOCCAM including preventing P202 from making any copies of Confidential Information without prior written consent from ZOCCAM.  Additionally, the NDA that P202 return any confidential information upon request of ZOCCAM.

16.     ZOCCAM provided P202, Lancashire, Andrews, and other P202 employees with the confidential information and source code for ZOCCAM App. to discuss the desired updates. After a review of ZOCCAM's code, P202 reported to ZOCCAM that its code was poorly written and would need to be rewritten to enable ZOCCAM to scale.

17.     After multiple discussions and a workshop about the updates needed for the ZOCCAM App., ZOCCAM hired P202 to update the ZOCCAM App. and provide other technology services for ZOCCAM.  On June 2, 2015, ZOCCAM and P202 entered into a Master Services Agreement ("MSA"), attached as Exhibit 2, to define the scope of P202's work. The MSA

**COMPLAINT – Page 4**

further required P202 to maintain and protect the confidentiality of ZOCCAM's proprietary information and source code.

18.      As part of the MSA and work with P202, ZOCCAM LLC converted itself, on June 24, 2015, to ZOCCAM with the same rights, duties and obligations under the NDA and MSA as ZOCCAM LLC.  Ms. Cook remained as ZOCCAM's CEO.

19.      Pursuant to the MSA and subsequent statements of work, ZOCCAM has paid P202 approximately $150,000.00.

20.      On June 26, 2015, ZOCCAM's shareholders approved and adopted ZOCCAM's Bylaws and an Equity Rights Agreement.

**Bold's Investment in ZOCCAM**

21.      As part of P202's employment, Bold—a company controlled by P202's principals, Defendants Lancashire and Andrews—and Bold's board of directors purchased 500,000 shares of Series A Preferred Stock in ZOCCAM for one dollar ($1) per share.

22.      Of the 500,000 Series A Stock purchased, half (250,000 shares) are held by Bold. The remaining 250,000 shares were distributed among Bold's Board of Directors, including 62,500 shares to Mr. Lancashire and 25,000 shares to Mr. Andrews.

23.      Under ZOCCAM's Certificate of Formation, the holders of Series A Stock, *i.e.*, Bold and its board of directors, are entitled to appoint two (2) Directors to ZOCCAM's five (5) member Board of Directors (the "Series A Directors").

24.      Following Lancashire, Andrews, and Bold's purchase, the Series A shareholders elected Defendants Lancashire and Andrews as the Series A Directors on ZOCCAM's Board. Defendants Lancashire and Andrews remained as officers of P202 and directors of Bold.

**Todd Girvin's Employment as CTO**

25.     At the time ZOCCAM hired P202 to update the ZOCCAM App., Defendants Lancashire, Andrews, and P202, recommended that ZOCCAM hire Todd Girvin as ZOCCAM's Chief Technology Officer (CTO) to facilitate and update the ZOCCAM App. and thereafter to maintain and lead the technology initiatives for ZOCCAM.

26.     On June 13, 2015, after deciding to hire Mr. Girvin, Defendant Andrews provided Ms. Cook with a template offer letter to provide to Mr. Girvin.  At the same time, Defendant Andrews provided the template to ZOCCAM and Ms. Cook, Mr. Andrews was also advising Mr. Girvin, a prospective employee, to negotiate his contract with Ms. Cook and ZOCCAM.  Mr. Andrews conversed with Mr. Girvin to discuss the specifics of a potential stock offer provided by ZOCCAM.  In a chain of emails dated June 12 through June 14, 2015, Mr. Andrews told Mr. Girvin to ostensibly negotiate his offer letter because Mr. Andrews was "not sure she [Ms. Cook] has filled out too many of them before."

27.     Relying on these recommendations and templates from P202 and Defendant Andrews, ZOCCAM hired Mr. Girvin as ZOCCAM's CTO on June 21, 2015.

28.     P202 and Defendant Lancashire recommended to ZOCCAM that Todd Girvin, as ZOCCAM's CTO work from P202's offices during the course of the ZOCCAM App. rebuild. From June 22, 2015 through October 2015 Mr. Girvin worked on location at P202.

**Problems with P202's Development of ZOCCAM's App. v.2**

29.     On June 22, 2015, ZOCCAM and P202 executed a Statement of Work #1 ("SOW1"), in which P202 was to address problems with ZOCCAM App. and build "new ZOCCAM mobile applications . . . that puts the application on a solid technology foundation." *See* Statement of Work #1 (June 22, 2015), attached as Exhibit 3.  Additionally, as part of SOW1,

P202 was required to "work with [ZOCCAM] to scope, decompose, and prioritize development backlog . . ." and give weekly status reports detailing the key decisions or open issues including timing or budget concerns. The project was scheduled to end by August 31, 2015; this was just in time for the ZOCCAM App. to be released publically before the 2015 Texas Realtor Conference ("2015 TRC") which began on September 1, 2015.

30.     After the project began, however, ZOCCAM began noticing several deficiencies with the P202's development of the ZOCCAM App. and performance of P202's obligations including issues with the scope of work, billing, accounting fees and delegation.

31.     ***Scope of the Work.***  Throughout the ZOCCAM App. Project, ZOCCAM specified that the scope of work included coupon or promo code functions and buyer check capture. In its status reports, P202 made clear that it was performing work on many of these defined functions. After P202 spent time allegedly developing such functionality, it ceased working on them and later claimed that the functionality was outside the scope of SOW1 despite the clear indication that the project is to "fix[] the pressing user experience challenges."

32.     SOW1 recognized that one of the pressing problems was that the application had "[n]o support for coupons" or, in other words, P202 and ZOCCAM understood that promo code or coupon support was a problem with version one of the ZOCCAM App.

33.     Despite it being referenced in the SOW1, P202 claimed—less than two weeks before the expected delivery date and demonstration at the 2015 TRC—that the promo codes were not included in the original SOW1. On August 20, 2015, P202 required ZOCCAM to execute Change Request #1 at an additional cost of six thousand, four hundred sixty dollars ($6,460.00). P202 eventually performed the necessary work but only after ZOCCAM signed the change request

**COMPLAINT** – Page 7

34.     Similarly, P202 unexpectedly changed the scope of its project regarding buyer check capture functionality.  Buyer check capture allows an application user to submit or deposit a check through a picture taken by their mobile device with a camera.  On July 21, 2015, P202 provided its weekly status report and noted that P202 had "User Stories and Acceptance criteria written for Buyer's check capture."   In the next week's report, P202 acknowledged that its developer was "work[ing] on the design for 'Buyer Check Capture' flow."  On August 4, 2015, the weekly summary reported that the "Team completed the option money flow user stories and acceptance criteria and Anne started the design," which echoes the previous weeks' reports regarding buyer check capture.

35.     Despite applying P202 time and work toward buyer check capture and reporting the efforts to ZOCCAM, P202 told ZOCCAM in mid-August that buyer check capture is not within the scope of SOW1.  On August 11, 2015, with less than one month before the launch, P202 provided ZOCCAM with a third statement of work, which, according to P202, would cost ZOCCAM an additional $50,680.00 to perform work that P202 had already begun under SOW1. *See* Statement of Work #3 (Aug. 11, 2015), attached as Exhibit 5.

36.     Throughout the project, P202 attempted to shrink the agreed size of the project by arguing that several key features were outside the project's scope despite the features being referenced explicitly in the SOW1 or being worked on for several weeks of the project before P202 raised them as potential issues.

37.     ***Billing Discrepancies.***   At the beginning of the project, there were also discrepancies in the status report and invoice for the hours worked on the project.  In the invoice covering the start of the project through the end of June 2015, P202 billed ZOCCAM for eleven thousand, one hundred sixty dollars ($11,160.00) for 65.5 hours of work.  However, when

ZOCCAM received the status report, P202 noted that only 14 hours of work had been completed at a bill of two thousand three hundred and eighty dollars ($2,380.00).

38.     When this issue was raised with P202, P202 described it as a discrepancy caused by the status report containing all hours, whether invoiced or not.  This explanation fails to explain why the status report would have *fewer* hours than the invoice.  Instead, P202 charged for an additional 51.5 hours not accounted for on the initial status report for the same period of time.  Nevertheless, ZOCCAM has paid over $150,000.00 of P202's invoiced fees.

39.     Despite having paid each invoice from P202, on May 23, 2016, ZOCCAM disputed the final payment of $40,000.00 because "the services delivered by [P202] were deficient and [] there are several items in scope that were not delivered."  P202 failed to remedy the dispute or to deliver a working product.

40.     ***P202's Accounting Fees.***  ZOCCAM's Series A investors, led by Bold, Lancashire, and Andrews, had a right to approve a vendor to prepare all books and accounting records for ZOCCAM.

41.     The investors chose P202 to maintain all books and invoices.  Pursuant to this choice, ZOCCAM and P202 executed a second statement of work ("SOW2") pursuant to the MSA.  *See* Statement of Work #2 (July 31, 2015), attached as Exhibit 4.  Under SOW2, P202 was responsible for providing monthly financial statements that complied with GAAP principles.

42.     Given P202's failure to meet its obligations, ZOCCAM was forced to hire an outside CPA to review and revise all the financials prepared by P202.

43.     ***Delay of Working Product***.  Because ZOCCAM expected delivery and release of ZOCCAM App. prior to the 2015 TRC, ZOCCAM spent over $20,000.00 in marketing and other costs preparing to demonstrate, advertise, and premier the updated application.

**COMPLAINT** – Page 9

44.     On August 28, 2015, ZOCCAM App. was released to the Apple App Store.  The Android version of the application was not complete or delivered by September 1, 2015, as required.  Upon release, both applications were non-operational and failed to perform the basic functions that ZOCCAM required through the MSA and statements of work.

45.     Most importantly, P202 failed to inform ZOCCAM that both versions of the ZOCCAM App. would be non-operational as of September 1, 2015, the first day of the 2015 TRC.  ZOCCAM first learned that the ZOCCAM App. was non-operational during the 2015 TRC.  As such, ZOCCAM was left stranded at the 2015 TRC with a product that did not work.  Prior to the 2015 TRC, every status report provided by P202 described the project as "green" or "in on-time and on-budget."  Yet, ZOCCAM did not receive the application on-time or on-budget.  As a result, ZOCCAM could not demonstrate the ZOCCAM App. at the 2015 TRC.

46.     At the end of August 2015, Ms. Cook raised ZOCCAM's concerns with P202's failure to comply with the MSA and statements of work with Mr. Lancashire and Mr. Andrews. Ms. Cook also pointed out P202's attempts to limit the scope and excess work on features not delivered.

47.     ZOCCAM continued to have persistent failures with the ZOCCAM App. after P202 delivered the application.  Finally, in October 2015, following yet another P202 demonstration of the ZOCCAM App., the application briefly worked as delivered by P202.  Ms. Cook stated in emails to Defendants Lancashire and Andrews and P202 employees Jess Dolson, Russ Bair, and Scott Wojan that the application looked great.  Nevertheless, shortly thereafter, at another demonstration the ZOCCAM App. once again failed to work.  The consistent problems with the

ZOCCAM App. before and after October 6, 2015, demonstrate that the produced application failed to meet the requirements in the MSA and SOW1.

48.     Because the ZOCCAM App. was nonoperational when delivered by P202, ZOCCAM was forced to hire an independent consulting group to review the ZOCCAM App. and P202's work on it.

**Independent Review Reveals Issues with ZOCCAM App.**

49.     In May 2016, ZOCCAM hired Larry Eppard at Leopard Consulting Group to analyze and review P202's work on updating the ZOCCAM App.

50.     Mr. Eppard concluded that P202 failed to deliver a finished product, *i.e.*, a working mobile application for the transfer of earnest money, to ZOCCAM.  He further concluded that extensive development of the ZOCCAM App. was required to finish the application contemplated by the MSA and statements of work.

**Independent Review Reveals ZOCCAM's Portal was Shut Down**

51.     Prior to engaging P202, ZOCCAM had a working customer portal for ZOCCAM to onboard the title company customers and for the title company customers to utilize to track orders.  P202 claims that they were not aware of the portal and had never seen it.  The portal is in ZOCCAM's code, which P202 claims to have reviewed before making the opinion that the code needed to be rewritten.

52.     Given P202's failure to deliver a completed application, ZOCCAM hired Mr. Eppard to finish the project and complete P202's work.  Although Mr. Eppard's work on the application is ongoing, he was able to provide a working version of the ZOCCAM App. for an additional cost of more than $85,000.00.  ZOCCAM will likely incur additional expenses as Mr. Eppard works to finalize the ZOCCAM App.

<u>**COMPLAINT**</u> – Page 11

**Defendants Lancashire and Andrews Continued Conflict of Interest**

53.     After Leopard Consulting completed its initial report, Ms. Cook provided a confidential draft of the report to the ZOCCAM Board of Directors including Defendants Lancashire and Andrews.

54.     Mr. Lancashire, who is also an officer of P202, responded to Ms. Cook, concluding that "she has a serious nerve."  They also indicated they were going to provide the confidential report to P202, which is a direct conflict of interest.  Moreover, Ms. Cook stated that the report was confidential for ZOCCAM board only and indicated it was in the best interest of ZOCCAM to not share the report including with P202.

55.     Likewise, despite clear conflicts of interest in the dispute between ZOCCAM and P202, both Defendant Lancashire and Andrews have taken positions adverse to ZOCCAM and made damaging remarks regarding ZOCCAM.

**Todd Girvin Violated His Obligations to ZOCCAM**

56.     On information and belief, Mr. Girvin negligently produced and uploaded ZOCCAM's confidential source code to unsecure repositories and continues to allow unauthorized access to others of ZOCCAM's confidential source code.

57.     During his employment, Mr. Girvin, without approval from ZOCCAM, was also working to develop unrelated applications, "HealthKeepr" and "UpKeepr."  Additionally, P202 employees, while working on the ZOCCAM App., also assisted and helped Mr. Girvin in UpKeepr's development.

58.     On information and belief, UpKeepr is, at least, partially owned by Improving Enterprises, LLC of which is owned in part by Defendant Girvin.

59.     On June 1, 2016, ZOCCAM terminated Mr. Girvin as CTO.  Without permission from ZOCCAM, Mr. Girvin deleted his user account and other ZOCCAM information from his company computer before leaving ZOCCAM.

**P202 Continues to Access ZOCCAM's Confidential Source Code**

60.     Despite ZOCCAM ending its relationship with P202 before April 2016, P202 continued to access source code for the ZOCCAM App.  Specifically, Scott Wojan, a P202 employee, accessed ZOCCAM's confidential source code, and pushed the source code to MyGet multiple times from April 12, 2016 through May 2, 2016.  After Mr. Wojan pushed ZOCCAM's code to MyGet, he also accessed the MyGet account in order to "complete the build".

61.     Ms. Cook confronted Defendant Andrews on multiple dates from May to August 2016 about P202's continued unauthorized access to ZOCCAM's confidential source code.  When confronted about P202's continued access, P202 denied knowledge of any continued access to ZOCCAM's source code from April 12, 2016 to May 2, 2016.  Defendant Andrews and P202 would only confirm that P202 no longer had access to GitHub which contains only ZOCCAM's first code version of the code and not the code completed under the MSA.  P202 refused to confirm that it did not have access to ZOCCAM's source code on MyGet or any other repository.

62.     Given ZOCCAM's concerns over the access and locations of its confidential source code, ZOCCAM has requested that P202 and its principals, Defendants Lancashire and Andrews, certify that Defendants P202, Bold, Lancashire and Andrews have no other copies of ZOCCAM's confidential source code uploaded to repositories to which P202 or other third parties have access. To date, P202, Bold, Lancashire, and Andrews have all refused to certify to this.

63.     In a meeting on August 1, 2016, between Ms. Cook of ZOCCAM and Mr. Lancashire and Mr. Andrews of P202, Mr. Lancashire, Mr. Andrews, and P202 again refused to

certify that ZOCCAM's source code was not uploaded to an unsecure online repository through which P202 or any other third party could access.

## CAUSES of ACTION

### COUNT 1 – Breach of Contract – Failure to Produce Working Product
### (Against P202)

64.     Plaintiff restates the preceding allegations and incorporates them by reference, as if fully set forth.

65.     On June 2, 2015, P202 and ZOCCAM entered into a valid and enforceable MSA. On June 21, 2015, pursuant to the MSA, SOW1 was agreed upon and entered into by ZOCCAM and P202.

66.     Pursuant to SOW1, P202 agreed to produce a working version of the ZOCCAM App., with all the modifications and requests detailed in the statement of work, to ZOCCAM on or before August 31, 2015, for use at the 2015 Texas Realtor Conference.

67.     As noted above, P202 breached the MSA, SOW 1, and SOW2 by (1) failing to provide an application with the functionality within the scope of the project, (2) failing to timely provide a working version of the application, (3) failing to provide GAAP-based accounting, and (4) failing to perform the required accounting services.

68.     ZOCCAM was forced to expend, at least, $85,000.00 in additional costs to obtain a working version of the updated ZOCCAM App.

69.     As a result of P202's breach of the MSA, SOW1, and SOW2, ZOCCAM has been damaged, continues to be damaged, and will be damaged in the future, including, but not limited to, loss of revenue, loss of business relationships, loss of value in ZOCCAM's business, the cost of the application, cost to fix or correct errors in the delivered application, lost enterprise valuation, and loss of conference costs due to failed demonstrations, in an amount that will be proved at trial.

70.     ZOCCAM has fully performed its obligations under the MSA, SOW1, and SOW2 and all conditions precedent, if any to ZOCCAM's right to recover against P202.

**COUNT 2 – Breach of Contract – Failure to Protect Confidential Information
(Against P202)**

71.     Plaintiff restates the preceding allegations and incorporates them by reference, as if fully set forth.

72.     On May 28, 2015, P202 and ZOCCAM entered into a valid and enforceable NDA. On June 2, 2015, P202 and ZOCCAM entered into a valid and enforceable MSA.  Both agreements contain provisions protecting both parties' confidential information.

73.     As a party to the NDA and MSA, ZOCCAM is the proper party to file the lawsuit alleging breach of the agreements.

74.     The confidential information disclosed to P202 was not public knowledge and at no time did ZOCCAM release or authorize the release of the confidential information to the public.

75.     ZOCCAM has complied with the provisions of the NDA and MSA and has not disclosed or otherwise improperly treated any confidential information disclosed by P202.

76.     Pursuant to the NDA, P202 agreed not to use or disclose ZOCCAM's Confidential Information for any purpose other than to evaluate and engage in discussions concerning a potential business relationship with ZOCCAM between the parties.  Under the protection of the NDA, ZOCCAM disclosed its source code to P202.

77.     Pursuant to the MSA, P202 agreed to hold in strict confidence any confidential information it received from ZOCCAM, agreed only to use the confidential information to perform its rights under the Agreement, and agreed not to transfer, convey, or otherwise disclose the confidential information to a third party.  Additionally, P202 agreed to take all measures reasonable and necessary to protect against the disclosure of the confidential information.  Under

the protection of the MSA, ZOCCAM disclosed all source code to P202 which P202 needed to complete its agreed-upon performance under the MSA.

78.     P202 breached the NDA and MSA by (1) uploading ZOCCAM's source code to online non-confidential third party repositories, and (2) accessing ZOCCAM's source code when it was not authorized to do so and after the engagement between P202 and ZOCCAM ended. Specifically, at least one P202 employee, Scott Wojan, accessed the confidential information numerous times after the engagement between P202 and ZOCCAM ended.

79.     As a result of P202's breach of the NDA and MSA, ZOCCAM has been damaged, continues to be damaged, and will be damaged in the future, including, but not limited to, loss of revenue, loss of business relationships, and loss of value in ZOCCAM's business.

80.     ZOCCAM has fully performed its obligations under the NDA and MSA, and all conditions precedent, if any to ZOCCAM's right to recover against P202.

## COUNT 3 – Copyright Infringement
### (Against P202)

81.     Plaintiff restates the preceding allegations and incorporates then by reference, as if fully set forth.

82.     ZOCCAM owns and has a valid copyright of the source code for its ZOCCAM App. including but not limited to each version or revision.  ZOCCAM has applied for registration of its valid copyrights in ZOCCAM Phone Application Version 1 (U.S. Copyright Office Application Service Request No. 1-3900235081), ZOCCAM Phone Application Version 2 (U.S. Copyright Office Application Service Requests No. 1-3902519298), and ZOCCAM Phone Application Version 2.1 (U.S. Copyright Office Application Service Requests No. 1-3902519552) The U.S. Copyright Office Application Service Requests Nos. 1-3900235081, 1-3902519298, and

1-3902519552.  These applications, and the associated deposits and application fees, were received by the U.S. Copyright Office prior to the filing of this Complaint.

83.    Pursuant to the NDA and MSA, P202 was granted limited access to ZOCCAM's confidential source code and other copyrighted materials.  Additionally, pursuant to Section 6 of the MSA, any Intellectual Property rights, including copyrights, of source code created or written for the ZOCCAM App. is ZOCCAM's property.   Once the relationship between P202 and ZOCCAM ended, P202 no longer had any rights to ZOCCAM's confidential source code and other copyrighted material.

84.    Mr. Girvin, pursuant to employment at ZOCCAM, had limited access to ZOCCAM's confidential source code and other copyrighted materials.  During his employment, Mr. Girvin placed ZOCCAM's copyrighted source code on third party source code repositories, such as MyGet.

85.    Without authorization, P202 copied, distributed, uploaded to third party repositories, and used ZOCCAM's copyrighted source code materials, in whole or in part, and accessed the copyrighted source code materials without ZOCCAM's permission.

86.    Specifically, after termination of the relationship between P202 and ZOCCAM, at least, Scott Wojan, a P202 employee, accessed and/or copied, without authorization, the confidential and copyrighted source code owned by ZOCCAM.  Upon information and belief, P202 had knowledge of the unauthorized access.

87.    P202 never had a license or permission to copy, distribute, upload to third party repositories, or use ZOCCAM's confidential copyrighted source code outside the limited authorizations provided by the MSA.  Further, P202 never had a license or permission to access

and/or use ZOCCAM's confidential copyrighted source code after the end of the working engagement between P202 and ZOCCAM.

88.     P202's acts of direct, contributory, and/or vicarious copyright infringement are willful, deliberate, and in utter disregard of ZOCCAM's copyrights to its confidential source code, pursuant to the Copyright Act, 17 U.S.C. § 504.

89.     As a result of P202's acts of direct, contributory, and/or vicarious copyright infringement, ZOCCAM has been damaged, continues to be damaged, and will be damaged in the future in an amount to be determined at trial.

### COUNT 4 – Breach of Fiduciary Duty
### (Lancashire and Andrews)

90.     Plaintiff restates the allegations and incorporates them by reference, as if fully set forth.

91.     As Directors of ZOCCAM, Defendants Lancashire and Andrews owe fiduciary duties to ZOCCAM including but not limited to (1) a duty of loyalty, (2) a duty of the utmost good faith, fairness, and honestly in dealings with ZOCCAM, (3) a duty of full disclosure for all issues affecting ZOCCAM and any personal interest the director has in the subject matter of a contract the director negotiates with ZOCCAM, and (4) a duty to use uncorrupted business judgment for the benefit of ZOCCAM.

92.     Defendants Andrews and Lancashire breached their fiduciary duties and have benefitted themselves at the expense of ZOCCAM.

93.     As ZOCCAM disputed the sufficiency and quality of P202's work on the ZOCCAM App., Defendants Lancashire and Andrews breached their duty of loyalty to ZOCCAM by accusing ZOCCAM of using P202 as a bank, rejecting an independent analysis of P202's work, and promising to provide the confidential report to P202 for response, using their places as

directors to convince ZOCCAM that they "[are] in agreement that [P202] need[s] to be paid immediately."

94.     Both Mr. Andrews and Lancashire, as officers of P202, have failed to meet their duty of care during P202's engagement with ZOCCAM.  Mr. Andrews and Lancashire oversaw and managed P202's work on the ZOCCAM App.  P202 failed to deliver a finished product pursuant to the MSA.  Defendants Andrews and Lancashire, as officers of P202 and a directors of ZOCCAM, had a responsibility to ensure that P202 met its obligations to ZOCCAM.  P202's failure to meet these obligations represents a violation of the duty of care that Mr. Andrews and Lancashire owe to ZOCCAM.

95.     Mr. Andrews and Lancashire have also violated their duty of loyalty and care through P202's continued access to ZOCCAM's source code following the end of ZOCCAM's relationship with P202.  Mr. Andrews and Lancashire failed to ensure that P202 maintained its obligations of confidentiality to preventing unauthorized copies and distribution of ZOCCAM's confidential source code and ensuring that P202 no longer had access to the confidential source code stored on unauthorized online repositories.

96.     Each of the above violations of Mr. Andrews and Lancashire have benefitted themselves at the expense of ZOCCAM.

97.     As a result of their breach of fiduciary duties, ZOCCAM has been damaged, continues to be damaged, and will be damaged in the future, including but not limited to, loss of revenue, loss of business relationships, and loss of value in ZOCCAM's business.

### COUNT 5 – Breach of Contract – Failure to Elect Directors in Good Faith
### (Against Bold, Andrews, and Lancashire)

98.     Plaintiff restates the allegations and incorporates them by reference, as if fully set forth.

99.     Defendants Bold, Andrews, and Lancashire hold a majority of the issued Series A Stock and, pursuant to ZOCCAM's Certificate of Formation, had the right to elect two (2) directors to the five (5) person Board of Directors for ZOCCAM.

100.     Defendants failed to elect Directors in good faith when it elected Directors to ZOCCAM's Board who had known conflicts of interest since both Defendant Lancashire and Defendant Andrews were the CEO and CFO, respectively, of P202.

101.     Because Defendants Bold, Lancashire and Andrews failed to exercise their duty of care and duty of loyalty, ZOCCAM has been damaged, continues to be damaged, and will be damaged in the future, including but not limited to, loss of revenue, loss of business relationships, and loss of value in ZOCCAM's business.

### COUNT 6 – Breach of Contract – Failure to Appoint Accounting Firm (Against Bold, Andrews and Lancashire)

102.     Plaintiff restates the allegations and incorporates them by reference, as if fully set forth.

103.     Pursuant to Section 3.4 of the Equity Rights Agreement, attached as Exhibit 6, Defendants exercise their right as investors to select an approved vendor to perform accounting and bookkeeping functions for ZOCCAM.

104.     Defendants appointed P202 as the company responsible as ZOCCAM's accounting vendor.

105.     Under the June 2, 2015 MSA, ZOCCAM and P202 entered into SOW2 on July 31, 2015, to provide accounting and bookkeeping functions.

106.     Defendants Bold, Andrews, and Lancashire breached their duty to choose a reasonable and adequate accounting firm under the contract by electing to use a company whose primary purpose was to develop software.

**COMPLAINT** – Page 20

107.    Because of Defendants Bold, Andrews, and Lancashire's breach of the Equity Rights Agreement, ZOCCAM has been damaged, continues to be damaged, and will be damaged in the future, including but not limited to, loss of revenue, loss of business relationships, and loss of value in ZOCCAM's business, and was forced to expend extra money to (1) have all accounting completed by P202 reviewed by an independent account, and (2) have the accounting books updated and completed to comply with reasonable accounting standards. In the alternative, the Equity Rights Agreement should be rescinded.

### COUNT 7 – Conversion
### (P202 and Girvin)

108.    Plaintiff restates the allegations and incorporates them by reference, as if fully set forth.

109.    Upon information and belief, P202 wrongfully exercised dominion and control over property belonging to ZOCCAM.  Since P202's employment with ZOCCAM has ended, P202 employees, including, at least, Scott Wojan, have accessed ZOCCAM's confidential source code from unsecure online repositories.  At that time, P202 attempted to assert dominion over the confidential source code by conducting a product build and/or unlawfully access ZOCCAM's source code through the MyGet platform.

110.    Additionally, pursuant to the MSA, any Intellectual Property rights in the source code, information, and materials created or written for ZOCCAM is ZOCCAM's personal property.  Once the relationship between P202 and ZOCCAM ended, P202 no longer had any rights to ZOCCAM's confidential source code and other copyrighted material.

111.    Additionally, Mr. Girvin, when terminated from ZOCCAM, took efforts to delete and destroy materials, files, and information from ZOCCAM's computer, all of which was and is ZOCCAM's personal property.

112.     Because of Defendants P202 and Girvin's conversion of ZOCCAM's confidential information, ZOCCAM has been damaged, continues to be damaged, and will be damaged in the future, including, but not limited to, loss of revenue, loss of business relationships, loss of value in ZOCCAM's business, and the loss of value or use of the converted property.

## COUNT 8 – Trade Secret Misappropriation
## (P202 and Girvin)

113.     Plaintiff restates the allegations and incorporates them by reference, as if fully set forth.

114.     Upon information and belief, P202 has misappropriated ZOCCAM's trade secrets. Since the employment relationship between P202 and ZOCCAM ended, P202 employees, including, at least, Scott Wojan, have accessed ZOCCAM's confidential source code from private online repositories.  At that time, P202 attempted to assert dominion over the source code by conducting a product build and/or unlawfully access ZOCCAM's confidential source code through the MyGet platform.

115.     ZOCCAM has taken great precautions and gone to great lengths to ensure its source code remains a confidential trade secret.  The code is unknown to third parties and was developed independently and specifically for ZOCCAM.  ZOCCAM's application and implementation is unique to the real estate world, with no comparable available alternative.

116.     Additionally, pursuant to the MSA, any Intellectual Property rights in the source code created or written for ZOCCAM remains ZOCCAM's personal property.  Once the relationship between P202 and ZOCCAM ended, P202 no longer had any rights to ZOCCAM's source code and other copyrighted material.

117.    Also, Girvin, when terminated from ZOCCAM, took efforts to delete and destroy materials, files, and information including any confidential, proprietary, or trade secret information from ZOCCAM's computer, all of which was and is ZOCCAM's personal property.

118.    Because of Defendants P202 and Girvin's misappropriation of ZOCCAM's trade secret information, ZOCCAM has been damaged, continues to be damaged, and will be damaged in the future, including but not limited to, loss of revenue, loss of business relationships, loss of value in ZOCCAM's business, and the loss of value or use of the converted property.  ZOCCAM also seeks an injunction to order P202 and Girvin to return all copies of ZOCCAM's trade secret or proprietary information.

### COUNT 9 – Declaratory Relief: No Breach of Contract
### (P202)

119.    Plaintiff restates the allegations and incorporates them by reference, as if fully set forth.

120.    An actual and justiciable controversy exists between ZOCCAM and P202 with respect to P202's allegation that ZOCCAM owes $40,000.00 pursuant to the services under the MSA, SOW1, and SOW2 because P202 has invoiced ZOCCAM for this amount and P202's counsel has sent a demand letter for the funds.  Absent a declaration, P202 will continue to wrongfully assert that ZOCCAM owes $40,000.00 and will cause ZOCCAM injury and damage.

121.    ZOCCAM has not breached the agreement and does not owe P202 the alleged $40,000.00 because, among other things, P202 failed to provide an operational ZOCCAM App. as obligated in the MSA, SOW1, and SOW2.

122.    Pursuant to 28 U.S.C. §§ 2201-02, ZOCCAM is entitled to declaratory judgment that it did not breach the MSA, SOW1, or SOW2 and does not owe P202 an amount of $40,000.00 under the MSA, SOW1, and SOW2.

**COUNT 10 – Exemplary Damages**
**(Against Bold, Lancashire, Andrews, Girvin, and P202)**

123.    Plaintiff restates the allegations and incorporates them by reference, as if fully set

forth. .

124.    Given the egregious actions of the Defendants as described above, ZOCCAM seeks

exemplary damages.  Specifically, upon information and belief, Defendants' actions represent an

effort to undermine the property rights of ZOCCAM to its proprietary software and confidential

source code in order to benefit themselves with full knowledge of their wrongdoing.  ZOCCAM

is therefore entitled to, and should be awarded, exemplary damages against all the above-named

Defendants.

## DEMAND FOR JURY TRIAL

125.    ZOCCAM demands a trial by a jury on all issues so triable.

## REQUEST FOR RELIEF

126.    For all the foregoing reasons, ZOCCAM respectfully requests that this Court enter

judgment against Defendants for:

      a.    compensatory damages, including but not limited to, loss of revenue, loss of business relationships, loss of value to ZOCCAM's business, actual damages for pecuniary loss, restitution damages, lost profits, recovery of the fair market value of lost property, disgorgement/forfeiture of any fees made by Defendant, and recoupment of Defendants' profits earned at the expense of ZOCCAM,

      b.    declaration and finding that ZOCCAM did not breach the MSA, SOW1, or SOW2 and P202 take nothing,

      c.    pre-judgment interest,

      d.    post judgment interest,

      e.    exemplary damages,

f.    preliminary and permanent injunctions returning all existing copies of ZOCCAM's source code and other confidential and proprietary information,

g.    attorneys' fees

h.    costs; and

i.    Any and all other remedies and relief, in law or equity to which ZOCCAM shows itself justly entitled.

Respectfully submitted,

_/s/ Jennifer H. Doan_
Jennifer H. Doan
State Bar No. 08809050
Catherine M. Maness
State Bar No. 24098032
HALTOM & DOAN
6500 Summerhill Road, Suite 100
Texarkana, TX 75503
Telephone: (903) 255-1000
Facsimile: (903) 255-0800
jdoan@haltomdoan.com
cmaness@haltomdoan.com

Brent D. McCabe
State Bar No. 24088004
HALTOM & DOAN
4975 Preston Park Blvd., Suite 625
Plano, TX 75093
Telephone: (469) 814-0433
Facsimile: (469) 814-0422
bmccabe@haltomdoan.com

**ATTORNEYS FOR PLAINTIFF ZOCCAM TECHNOLOGIES, INC.**